IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES M. KEITGES, | ) CASE NO. 8:08CV319 |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) **COMPLAINT AND REQUEST FOR** |
| | ) **DECLARATORY JUDGMENT** |
| DOMINA LAW GROUP, pc llo, et al, | ) **AND INJUNCTIVE RELIEF** |
| | ) |
| and, | ) **JURY TRIAL DEMANDED** |
| | ) |
| DAVID A. DOMINA, Individually and | ) |
| In His Official Capacity as an Officer | ) |
| of the Court, | ) |
| | ) |
| and, | ) |
| | ) |
| JAMES F. CANN, Individually and | ) |
| In His Official Capacity as an Officer | ) |
| of the Court, | ) |
| | ) |
| DEFENDANTS, | ) |

COMES NOW, James M. Keitges, ("Plaintiff") alleging and complaining of the

Defendants the following:

## JURISDICTION

1.      Jurisdiction is proper in the United States District Court for the District of

Nebraska pursuant to 28 U.S.C. § 1332 as the Plaintiff is a resident and citizen of the State of

Florida and the Defendants named herein are residents and citizens of the State of Nebraska and

located in the State of Nebraska, and the claims for relief exceed $75,000. All claims alleged

herein took place in the State of Nebraska. Jurisdiction is further proper under 28 U.S.C. §§

-1-

2201, 2202. Venue is proper under 28 U.S.C. § 1391.

## PARTIES

2.    **Plaintiff:**

**James M. Keitges** is a resident and citizen of the State of Florida currently

residing at 5930 Bermuda Lane, Naples, Florida 34119. Plaintiff is proceeding pro se in this

action.

3.    **Defendants:**

**Domina Law Group, pc llo** upon information and belief is a firm of trial lawyers

founded by Defendant David A. Domina practicing in areas of agricultural trial practice, class

action/anti trust, complex litigation, professional malpractice, unfair competition, and wrongful

death/personal injury. Upon information and belief Domina Law Group, pc llo current business

address in the State of Nebraska is 2425 S. 144th Street, Omaha, Nebraska 68144-3267.

Defendant Domina Law Group, pc llo web-site can be found at

http://www.dominalaw.com/news_view.cfm?PageID=1

**David A. Domina** upon information and belief is a Nebraska Bar licensed

attorney holding Nebraska Bar license #11043. Upon information and belief, David A. Domina

started the Law Firm Domina Law Group, pc llo in the year 1975. Upon information and belief,

David A. Domina practices in the areas of complex civil and criminal cases, class actions,

homicide, product liability, wrongful death and serious injury and complex commercial cases. In

order to provide the Court a more in depth background of Defendant David A. Domina, plaintiff

attaches hereto and incorporates herein David A. Domina's Personal Resume as **Exhibit "1"** and

-2-

as found via Domina Law Group, pc llo web-site

http://www.dominalaw.com/ew_library_file/Resume.pdf

David Domina complete resume:

<sup>1</sup>Resume.pdf    Service of process upon David A. Domina can be made at the address of 2425 S. 144th Street, Omaha, Nebraska 68144-3267.

**James F. Cann** at all material times hereto, was a practicing attorney in the

Domina Law Group, pc llo. Upon information and belief, James F. Cann is a Nebraska Bar

licensed attorney holding Nebraska Bar license #24158. Upon information and belief, James F.

Cann has left the Domina Law Group, pc llo and is currently practicing law with the law firm,

Koley Jessen, pc, llo located at One Pacific Place, Suite 800, 1125 South 103rd Street, Omaha,

Nebraska 68124. Upon information and belief, James F. Cann was admitted to the bar in 1998

and practices in areas of litigation and trial practice. Service of process upon James F. Cann can

be made at the address of One Pacific Place, Suite 800, 1125 South 103rd Street, Omaha,

Nebraska 68124.

## FACTUAL ALLEGATIONS

4.      On or about July 10, 2005, the plaintiff retained the law firm Domina Law pc, llo,

to represent him in an ongoing dissolution of marriage litigation in the District Court of Douglas

County, Nebraska.

5.      Attorneys for the plaintiff's ex-wife in said litigation for dissolution of marriage,

filed a motion to dismiss for failure to state a claim upon which relief can be granted.

6.      A hearing on said motion was scheduled to be heard on September 13, 2005. A

notice of hearing was properly served upon Plaintiff's counsel, James F. Cann on September 02,

-3-

2005.

7.     The hearing on Plaintiff's ex-wife motion to dismiss took place as scheduled on September 13, 2005 in Courtroom No. 8 of the District Court of Douglas County, Nebraska, 4th Floor, Hall of Justice in Omaha, Nebraska. Plaintiff's ex-wife and her counsel appeared to argue the motion before the court, however, Defendants failed to appear on behalf of their client, James M. Keitges, Plaintiff.

8.     The court entered an Order taking judicial notice no one appeared for the Plaintiff, granted Plaintiff's ex-wife motion to dismiss and taxed costs against the Plaintiff. Because of the Defendants negligence as alleged herein, the Plaintiff incurred the following damages: $23,614.00 due from overpayment of Plaintiff's Retirement Savings Plan; $70,000.00 in payment of attorney's fees and travel expense to attorney's office in the State of Nebraska; $350,000.00 in loss of investment due to accounts being frozen; $648,000.00 in loss of pension funds over 30 years; $17,800.00 in medical expenses and lost income; totaling $1,109,414.00 not including interest. (A true and correct copy of said Order are attached hereto and incorporated herein as **Exhibit "2"**).

9.     On September 23, 2005, Defendant James F. Cann wrote a letter to the Plaintiff admitting a hearing was held on Plaintiff's ex-wife motion to dismiss and no one from the law firm, including himself, appeared at said hearing on behalf of the Plaintiff. (Said letter is attached hereto and incorporated herein as **Exhibit "3"**).

10.     Defendant David A. Domina, prepared and drafted a dissertation of the Plaintiff's case involving dissolution of marriage on October 14, 2005, provided same to the Plaintiff and

-4-

Defendant, James f. Cann. (Said dissertation is attached hereto and incorporated herein as **Exhibit "4"**).

11.    On November 03, 2005, the Plaintiff drafted and sent an email to the law firm and Defendant, James F. Cann requesting he be advised of the results of an investigation conducted by the law firm and James F. Cann as to how his ex-wife's motion to dismiss and notice of hearing on same were not received by Defendants James F. Cann and David A. Domina. (A true and correct copy of said email is attached hereto and incorporated herein as **Exhibit "5"**).

12.    Defendant, James F. Cann responded to the Plaintiff's email in an email dated November 07, 2005, admitting to the Plaintiff the motion to dismiss and notice of hearing were received by the law firm but were not provided to David A. Domina or James F. Cann. (A true and correct copy of said email is attached hereto and incorporated herein as **Exhibit "6"**).

13.    In a letter drafted by the Plaintiff dated January 24, 2006, the Plaintiff informed the Defendants he was dismissing them as his counsel of record and advised them they have billed him for time spent on his case erroneously and inappropriately. He informed them they failed to appear for a hearing on his ex-wife's motion to dismiss of which they were provided notice of, and failed to provide him a copy of said motion and notice. (A true and correct copy of said letter is attached hereto and incorporated herein as **Exhibit "7"**).

14.    Defendants prepared and mailed to the Plaintiff statements for services rendered beginning August 11, 2005 and continuing on a monthly basis through January 10, 2006. (True and correct copies of said statements are attached hereto and incorporated herein as **Exhibits "8", "9", "10", "11", "12" and "13"** consecutively).

15.    Defendants failed to mail and provide the Plaintiff any statement of services

-5-

rendered for the months of February 2006 and March 2006.

16.     The defendants did not resume mailing and providing the Plaintiff any further statements of services rendered until May 01, 2008 and again on June 03, 2008 in the amount of $15,304.11. (A true and correct copy of said statements are attached hereto and incorporated herein as **Exhibits "14" and "15"** consecutively).

## FACTUAL ALLEGATIONS OF FRAUD

17.     Defendants drafted a letter dated September 20, 2006, addressed to the Plaintiff in which Defendant, David A. Domina discusses the Plaintiffs action for dissolution of marriage in great detail stipulating in ¶4 the various pleadings pending in the action when at all times material thereto the Defendant David A. Domina was cognizant the Plaintiff's case had been dismissed by the Court in an Order dated September 15, 2005. (A true and correct copy of said letter is attached hereto and incorporated herein as **Exhibit "16"**).

18.     In an email dated September 21, 2005 sent to the Plaintiff's email address, the Defendant, James Cann discusses at length the meeting the Defendants held with the Plaintiff in the State of Nebraska at the Defendants' law firm how to possibly settle the dissolution of marriage action with the Plaintiff's former wife and proceed in the case on the various motions before the Court when at all times material thereto the Defendants were cognizant the case had been dismissed by the Court in an Order dated September 15, 2005. (A true and correct copy of said email is attached hereto and incorporated herein as **Exhibit "17"**).

19.     It is fact, the Defendants were cognizant the Plaintiff's case for dissolution of marriage had been dismissed prior to Defendants letters and emails sent to the Plaintiff as stated above in ¶¶ 17 and 18 in that the Defendants billed the Plaintiff for reviewing the court's

-6-

Order granting dismissal of the case on September 16, 2005, as indicated within the Defendants'
statement to the Plaintiff dated October 11, 2005. (See Exhibit 10 hereto).

20.    Within the Defendants' October 11, 2005 statement to the Plaintiff, on
September 16, 2005, the Defendant David A. Domina billed the Plaintiff for reviewing the
Plaintiff's motion to dismiss which proves by prima facie evidence David A. Domina was
fully and wholly aware the Plaintiff's action for dissolution of marriage was no longer before
the court. However, the Defendants continued to defraud the Plaintiff by billing the Plaintiff from
the time the case for dissolution of marriage was dismissed by the court for such fees as
preparation for trial; preparation of organizing and reviewing file; preparation for trial and
determine strategy for going forward; review of documents; travel to courthouse; etc. (See
Exhibits 9, 10, 11 and 12 hereto).

## FACTUAL ALLEGATIONS OF LACHES

21.    The Defendants were fully and wholly aware they failed to attend the
hearing on the Plaintiff's former wife's motion to dismiss on or about September 16, 2005 when
they reviewed the Order of the court granting dismissal of the action.

22.    The Defendants were aware by failing to attend the hearing on the motion to
dismiss, the Plaintiff's former wife was granted dismissal by default which could have resulted in
the Plaintiff filing malpractice against the Defendants.

23.    The Defendants intentionally did not provide the Plaintiff any further statements
for services rendered following the April 2006 statement waiting for the statute of limitations to
expire on legal malpractice actions which in the State of Nebraska is two (2) years from the
discovery of the alleged malpractice.

-7-

24.     In the present action, the Plaintiff discovered the malpractice on or about January 24, 2006. The Defendants resumed mailing by first class mail statements of services rendered to the Plaintiff on or about May 1, 2008 and June 03, 2008, for legal work conducted after the court dismissed the dissolution of marriage action for failure by Defendants to attend the hearing they received a notice of hearing from the Plaintiff's former wife's attorney, Thomas Blount. (See exhibits 14 and 15 hereto).

## FACTUAL ALLEGATIONS OF CIVIL CONSPIRACY

25.     The Defendants were fully and wholly cognizant the court had dismissed the Plaintiff's case for dissolution of marriage based on default by the Defendants not appearing for the court scheduled hearing on the Plaintiff's former wife's motion to dismiss of which they admitted they had received a proper and timely notice of.

26.     The Defendants conspired to not inform the Plaintiff the case had been dismissed for failure by the Defendants in not attending the court scheduled hearing.

27.     The Defendants requested the Plaintiff travel to Nebraska to meet with the Defendants eight days following the courts dismissal of the case to discuss trial procedure with full knowledge the case was no longer before the court.

28.     The Defendants withheld the courts dismissing the action from the Plaintiff in an attempt to abduce further erroneous attorney's fees from the Plaintiff.

29.     The Defendants intentionally did not provide the Plaintiff any further statements for services rendered after the Plaintiff let it be known he was aware that due to the Defendants negligence he lost his action for dissolution of marriage until after the statute of

-8-

limitations expired in regard to malpractice claims.

## FIRST CLAIM FOR RELIEF

### FRAUD

30. Each and every allegation in the preceding paragraphs are re-alleged and incorporated herein by reference.

31. The Defendants intentionally deceived the Plaintiff their failure to attend the hearing on the Plaintiff's former wife's motion to dismiss of which they received timely proper notice resulted in the court granting dismissal based on default.

32. The Defendants charged to the Plaintiff erroneous fees for inappropriate services rendered in an attempt to collect additional attorney fees from the Plaintiff the Defendants were not entitled to.

33. The Defendants intentionally deceived the Plaintiff into believing his case would proceed to trial, arranged for the Plaintiff to travel to the State of Nebraska in order to meet with the Defendants and discuss trial procedures of which the Defendants charged attorney's fees to the Plaintiff, when at all times thereto, they were cognizant the case had been dismissed in order to be paid additional attorney's fees.

34. The Plaintiff has been damaged by the Defendants' fraud as alleged in that because of the Defendants fraudulent actions the Plaintiff lost his case and suffered monetary loss in the amount of $1,109,414.00 and is entitled to punitive damages, treble damages, in an amount yet to be determined, and additional relief as the Court deems just and appropriate.

## SECOND CLAIM FOR RELIEF

### CIVIL CONSPIRACY

35.     Each and every allegation in the preceding paragraphs are re-alleged and incorporated herein by reference.

36.     The Defendants conspired to withhold from the Plaintiff his action for dissolution of marriage was dismissed for failure of the Defendants to attend the court scheduled hearing on same of which they admitted receiving timely notice.

37.     The Defendants conspired to have the Plaintiff believe his action for dissolution of marriage was proceeding to trial when at all times material thereto the Defendants were cognizant the case had already been dismissed.

38.     The Defendants conspired to obtain additional attorney's fees from the Defendant by fraudulently charging the Plaintiff erroneous fees for trial preparation etc. when at all times material thereto the Defendants were fully and wholly aware the case had been dismissed.

39.     The Defendants collectively owed a duty to the Plaintiff to perform legal services to the best of their ability in an honest, professional, and just manner as the Plaintiff's attorneys of record.

39.     The Plaintiff has been damaged by the Defendants conspiracy as alleged and has suffered monetary loss in the amount of $1,109,414.00 and is entitled to punitive and treble damages, and further damages as the Court deems just and appropriate.

-10-

## THIRD CLAIM FOR RELIEF

### DECLARATORY JUDGMENT

40.     Each and every allegation in the preceding paragraphs is re-alleged and

incorporated herein by reference.

41.     Plaintiff asks the Court for a declaration the Defendants have committed mail

fraud pursuant to 18 U.S.C. § 1341 by attempting to collect payment from the Plaintiff for

fraudulent attorney's fees when at all times material thereto the Defendants were fully and wholly

cognizant they were not entitled to the attorneys fees they billed the Plaintiff for, and used the

United States Postal Service for Defendants scheme of false, misrepresented, fraudulent

pretenses of collecting the erroneous attorney's fees from the Plaintiff while holding Bar licenses

to practice law in various states throughout the U.S.

42.     Plaintiff respectfully asks the Court to enter an indictment against the Defendants

herein upon the Court's own initiative finding the Defendants are guilty of mail fraud as alleged

herein.

## FOURTH CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION

43.     Each and every allegation in the preceding paragraphs are re-alleged and

incorporated herein by reference.

44.     The Defendants fraudulently misrepresented to the Plaintiff the case was

still pending in the trial court by meeting with the Plaintiff at Defendants' office in the

State of Nebraska in order to discuss trial preparation when at all times material thereto the

-11-

Defendants were cognizant the trial court had dismissed the Plaintiff's action for dissolution of marriage eight days prior to the meeting.

45. The Defendants fraudulently misrepresented to the Plaintiff their attorney's fees by mailing through the United States Postal Service their statement of fees incurred for time spent on the Plaintiff's case when it was no longer before the court and at all times material thereto the Defendants were cognizant the case had been dismissed.

46. The Plaintiff has been damaged as a result of the Defendants fraudulent misrepresentation as alleged in the amount of $1, 109,414.00 and is entitled to compensatory, restitutionary, actual, conciliatory damages and further relief as the Court deems appropriate and just.

## FIFTH CLAIM FOR RELIEF

## PERMANENT INJUNCTION

47. Each and every allegation in the preceding paragraphs are re-alleged and incorporated herein by reference.

48. Plaintiff asks the Court for a permanent injunction thereby enjoining the Defendants from collecting any further or additional attorney's fees for alleged time spent on Plaintiff's dissolution of marriage case for the reasons stated herein above.

**WHEREFORE**, the Plaintiff prays the Court for the following relief:

1. Treble damages in an amount as provided by law;

2. Punitive damages in an amount as provided by law;

3. Actual damages in the amount of f $1,109,414.00;

-12-

4. Restitutionary damages in the amount of $1,109,414.00;

5. Conciliatory damages in the amount of $1,109,414.00;

6. A declaration by the Court the Defendants have committed mail fraud by using the United States Postal Service as a scheme to collect payment from the Plaintiff for fraudulent attorney's fees under false pretenses, by fraudulently misrepresenting to the Plaintiff he had incurred additional attorney's fees on his dissolution of marriage case the Defendants were his counsel of record when the fraudulent attorney's fees purportedly to be incurred were after the action had been dismissed by the trial court;

7. Permanent injunction thereby enjoining the Defendants from collecting any further or additional attorney's fees from the Plaintiff;

8. All costs of this action be taxed against the Defendants;

9. Trial by jury;

10. Interest at a rate as provided by law;

11. Other and further relief as the Court deems appropriate and just.

This the ____ 23Rd ____ day of July, 2008.

RESPECTFULLY SUBMITTED,

JAMES M. KEITGES
5930 Bermuda Lane
Naples, Florida 34119
239-287-8687

-13-

## VERIFICATION

STATE OF NEBRASKA    §
                    §
COUNTY OF DOUGLAS   §

     JAMES M. KEITGES, upon first being duly sworn, deposes and says:

     That he is the Plaintiff in the foregoing action, that he has read the contents of the

foregoing Complaint, and that the contents of said document are true to his own knowledge

except as to matters stated upon information and belief, and as to those matters, he believes them

to be true.

     FURTHER, AFFIANT SAYETH NOT,

                                                 _James M. Keitges_
                                            JAMES M. KEITGES

     SUBSCRIBED AND SWORN TO BEFORE ME, this ____23____ day of

July, 2008.

                                            _Arlene L. Morehouse_
                                          NOTARY PUBLIC

MY COMMISSION EXPIRES: _____April 17, 2011_____

ARLENE L. MOREHOUSE
MY COMMISSION EXPIRES
April 17 2011



Practice Areas Focus

• Complex Litigation
• Of Counsel For Trial
• Trial Practice

Try Our Search Engine

**Home**

**About The Firm**

**What's New**  ▸

**Our Lawyers**

**Practice Areas**

**Landmark Cases**

**Investigations**  ▸

**Literature**

**Web Resources**

**Opportunities**

**Our Lawyers**

### David A. Domina
Domina Law Group pc llo
2425 South 144th Street
Omaha, Nebraska 68144-3267

**Phone:** (402) 493-4100 **Email:** Email Me
**Fax:** (402) 493-9782 **Website:** http://www.dominalaw.com



© Larry Ferguson





David A. Domina formed the firm in 1975. He is virtually unparalleled for his diverse and extensive trial experience. Mr. Domina is one of a handful of American lawyers to have won a jury verdict for more than $ 1 billion. He has also successfully defended criminal capital cases. Few lawyers have had either experience. Virtually none have had both.

Mr. Domina's extensive trial experience involves complex litigation in national, regional and local proceedings. He has tried complex civil and criminal cases, including class actions, homicide, product liability, wrongful death and serious injury, and a wide variety of complex commercial cases. Mr. Domina's appearances have taken him to courts across America. He has appeared in court in more than two-thirds of the states in the nation, and has tried nearly three hundred cases to verdict. His total trial experience includes more than a thousand suits.

Mr. Domina has successfully

• Won a jury verdict of more than $1.281 billion on behalf of cattlemen against the nation's largest slaughter house for market manipulation.
• Won a multi-million dollar class action for shareholders of a publicly traded insurance company.
• Won 9 out of 9 homicide trials.
• Argued to declare invalid an entire estate property tax regime.
• Argued to declare invalid a major public improvement bid letting for violating public meeting laws.
• Argued to establish essential element of the law of implied warranties.
• Argued to establish limits for contractual rights to restrict recourse for consumers.
• Represented attorneys in disciplinary proceedings.
• Published and spoken extensively among his peers in numerous settings.

David Domina complete resume: Resume.pdf

**Areas of Practice:**
Trial Practice
Complex Litigation
Complex Appeals

*Exhibit 1*

Business & Commercial Litigation
Wrongful Death
Anti-Trust
Personal Injury & Products Liability for Plaintiffs
Criminal Defense
Agriculture Law-Litigation
Class Action Prosecution

**Bar Admissions:**

Nebraska, 1973
Missouri, 1973
New York, 1995
Michigan, 1999
U.S. District Court District of Nebraska, 1973
U.S. District Court Western District of Missouri, 1973
U.S. District Court Eastern District of New York, 1995
U.S. District Court Western District of New York, 1995
U.S. District Court Northern District of New York, 1995
U.S. District Court Southern District of New York, 1995
U.S. District Court District of Arizona, 1995
U.S. Court of Appeals 8th Circuit, 1974
U.S. Court of Appeals 10th Circuit, 1991
U.S. Supreme Court, 1996
U.S. Court of Federal Claims, 1997
U.S. Tax Court, 1974

**Education:**

University of Nebraska College of Law, Lincoln, Nebraska, 1972
*Honors:* Order of the Coif
*Honors:* Order of Barristers
*Honors:* With Distinction
*Honors:* Member, National Moot Court Team, 1971-1972
*Honors:* Member, National Finalist Debate Team Undergraduate, 1972
Law Review: Nebraska Law Review, Associate Editor, 1972

**Published Works:**

*Domina, Proving Anti-Competitive Conduct in the U.S Courtroom The Plaintiff's
Argument in Pickett v. Tyson Fresh Meat, Inc.,* Journal of Agriculture and Food Industrial
Organizations, No.8, 2004

*Slowiczek & Domina, The Equitable Distribution of Farms,* Journal American Academy
Matrimonial Lawyers, No. 2, 2004

*Julia is a Federal Juror,* Voir Dire Magazine, Autumn, 2004

*Domina, Discovery in Complex Dissolution Cases,* Nebraska State Bar Association,
October, 2003

*Domina, It Is Time for Antitrust to Come to the Prairie,* The Nebraska Lawyer,
December, 2002

Trial of Large Livestock Nuisance Cases; Preventive Practice and Practicalities, Midwest
Pork Producers, September, 2001

Voir Dire in an Urban Setting, NATA, October, 2001

Schafersman v. Agland Coop, A Summary, NATA, October, 2001

Objection! A Powerful Word!, Prairie Barrister, December, 2000

Closing Argument - Law & Presentation, NATA, October, 2000

Medical Examinations - Limitations, Prairie Barrister, July, 2000

Medical Examinations and Rule 35, Prairie Barrister, September, 1999

The Impeachment of Andrew Johnson, Voir Dire Magazine, Fall, 1999

Opening Statements - Law & Presentation, NATA, October, 1998

Medical Examinations - Techniques for Combating Abuses, NATA, July, 1998

Ethical Dilemmas in Daily Practice (Guest), University of Nebraska College of Law, Summer, 1997

Orientation to the Legal Profession (Guest), University of Nebraska College of Law, Autumn, 1997

Trial; A Primer, National Institute of Legal Education, 1996

Commercial Transactions & Litigation Risks, Voice Magazine, 1996

Closing Argument - Technique & Sincerity, Nebraska State Bar, 1995

Masters in Trial, American Board of Trial Advocates, 1995

Preventing and Trying Nuisance Claims, Nutrena, 1994

Nuisance Law and Livestock Producer's Risks, Nebraska Cattlemen's Association, 1994

Expert Witness Direct & Cross Examination, NATA, October, 1993

UCC Issues for Grocers, Voice Magazine, 1993

Jones v. Clinton, Appellate Advocacy, National Institute of Legal Education, 1993

Masters in Trial, American Board of Trial Advocates, 1991

Interviews, Beauty Contests, and Client Counsel Selection, American Bar Association Convention, 1989

Comparative Negligence, A Plaintiff's Perspective, Rural Nebraska Bar Convention, 1988

Disappearance & Defense, CBS, 60 Minutes (2 Segments), 1988

Leadership and the Law, Nebraska Youth Leadership Counsel, 1987

Products Liability Trial and Practice, Nebraska State Bar, 1985

Trial Demonstration & Techniques, NATA, October, 1984

Report to the Citizens of Nebraska on Public Officials & Their Conduct - Failure of Commonwealth Savings, December, 1983

Appellate Review of Workers Compensation Cases, Nebraska Law Review, 1972

#### Representative Cases:

Bellino v. McGrath North Mullin & Kratz, PC LLO,  274 Neb. 130, 738 N.W.2d 434 (2007).
Neiman v. Tri R. Angus, Inc.,  274 Neb. 252, 739 N.W.2d 182  (2007).
Nebraska Legislature ex rel. State v. Hergert,  271 Neb. 976, 720 N.W.2d 372 (2006).
Gilbert M. and Martha H. Hitchcock Foundation v. Kountze,  272 Neb. 251, 720 N.W.2d 31 (2006).
Pennfield Oil Co. v. Winstrom,  272 Neb. 219, 720 N.W.2d 886  (2006).
Roth v. Wiese,  271 Neb. 750, 716 N.W.2d 419 (2006).
Ranchers Cattleman Action Legal Fund United Stockgrowers of America v. U.S. Dept. of Agriculture,  415 F.3d  1078, 27 ITRD 1570, 35 Envtl. L. Rep. 20,152 (9th cir 2005).
Pickett v. Tyson Fresh Meats, Inc.,  420 F.3d 1272, 2005-2 Trade Cases P 74,897 (11th Cir 2005).

Kraft v. St. John Lutheran Church of Seward, Neb., 414 F.3d 943, 67 Fed. R. Evid. Serv. 940 (8th Cir. 2005).
Racicky v. Farmland Industries, Inc., 328 F.3d 389, 33 Envtl. L. Rep. 20,190, 61 Fed. R. Evid. Serv. 318 (8th Cir. 2003).
National American Ins. Co. v. CenTra, Inc., 151 F.3d 780 (8th Cir. 1998).
Acme Inv., Inc. v. Southwest Tracor, Inc., 105 F.3d 412 (8th Cir. 1997).
Acme Investment, Inc. v. Southwest Tracor, Inc., 105 F.3d 412 (8th Cir. 1997).
McIlheran v. Lincoln Nat. Life Ins. Co., 31 F.3d 709 (8th Cir. 1994).
Jaksha v. State, 486 N.W.2d 858 (Neb. 1992).
Becker v. U.S., 968 F.2d 691 (C.A.8 (Neb.) 1992).
Crowley v. McCoy, 449 N.W.2d 221 (Neb. 1989).
PWA Farms, Inc. v. North Platte State Bank, 371 N.W.2d 102 (Neb. 1985).
Nixon v. Harkins, 369 N.W.2d 625 (Neb. 1985).
Nixon v. Madison County Agr. Soc., 348 N.W.2d 119 (Neb. 1984).
Peterson v. North American Plant Breeders, 354 N.W.2d 625 (Neb. 1984).
State v. Douglas, 349 N.W.2d 870 (Neb. 1984).

**Classes/Seminars Taught:**

Unfair Competition in Highly Concentrated Ag Markets, R Calf Annual Conference, 2002

Price Manipulation and Vertical Integration, paper and presentation, Invited Attorneys' Conference, 2002

Lecturer, Trial Practice Matters, Nebraska Bar Association

Key Note Speech, Organization for Competitive Markets, WY Stock Growers Association, Douglas, WY State Fair, August, 2002

Texas Cattle Feeders Association & Organization for Competitive Markets, Amarillo, TX, July, 2002

Livestock Crisis Meeting Speaker, R-CALF & Organization for Competitive Markets, Omaha, NE, May, 2002

Developments in Nebraska Law - Government, Municipalities Schools, Civil Procedure, Annual Presentations, 1975 - 1982

Guest Sermon, UUA General Convention, 1995

Guest Sermon, UUA Midwest Convention, 1996

Guest Sermons, Numerous Protestant Church Occasions

**Honors and Awards:**

AV Rated, Martindale-Hubbell
Premier Lawyer's List, Martindale-Hubbell
"Sermon of the Year" Award, Unitarian Universalist Association of America

**Professional Associations and Memberships:**

American Board of Trial Advocates
Diplomat

Association of Trial Lawyers of America

Nebraska Association of Trial Attorneys
Board of Directors

Missouri State Bar

New York State Bar

Michigan State Bar

University of Nebraska College of Law, Alumni Association, 1982 - 1984

Nebraska State Bar Association

Ethics Committee

Nebraska State Bar Association
Practice & Procedure Committee

Eighth Circuit Court of Appeals
Gender Fairness Committee

American Bar Association
Small Law Firm Committee

American Bar Association
Torts & Insurance Committee

American Trial Lawyers Association
Products Liability Committee

University of Nebraska College of Law
Centennial Celebration Alumni of Representative, Decade of 1970s
**Past Employment Positions:**
Candidate for Governor, 1986

Stanton County, Special Litigation Counsel, 1984

Thurston County, Special Litigation Counsel, 1984

Nebraska Board of Education Lands and Funds, 1983 - 1986

State Economic Development Council, Commissioner

Commonwealth Savings Insolvency, Acting Attorney General, 1983 - 1984

Cuming County, Special Litigation Counsel, 1980

Madison County, Special Litigation Counsel, 1977

State of Nebraska, Special Acting Attorney General (Impeachment Proceedings, Attorney
General of Nebraska), 1984

Judge Advocate General Corps, United States Army & Army Reserve, Captain, Defense
Counsel, 1973 - 1979
**Pro Bono Activities:**
Death Penalty Defense & Habeas Corpus
Defense of Accused State Legislator
Defense of Accused Judge
Defense of Numerous Lawyers in Disciplinary Matters
Capital and Life Incarceration Defenses
**Ancillary Businesses:**
Expert Witness, Approximately 15 Appearances

**◑**
Search  TOP

Trial Practice. Not just talk.

Home | About The Firm | What's New | Our Lawyers | Practice Areas | Landmark Cases |
Investigations | Literature | Web Resources | Opportunities

© 2007-2008 Domina Law. All Right Reserved.  Powered by PGX Webmaster™     **Disclaimer**    **Site Map**   **Save This**    **Print This**

COPY

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

CHERYL LYNN KEITGES,           )        DOC. 997      NO. 314
                               )
          Petitioner,          )
                               )
     v.                        )        ORDER
                               )
JAMES M. KEITGES,              )
                               )
          Respondent.          )

NOW on this 13th day of September, 2005, this matter came on to be heard upon Petitioner's Application pursuant to Rule 12(d) of the Nebraska Rules of Pleading in Civil Actions. The Petitioner appeared by and through her attorneys, Thomas Blount and Mark S. Bertolini. The Respondent did not appear but was duly notified of the hearing. The Court took judicial notice of the Decree of Dissolution of Marriage entered January 4, 2002, three Qualified Domestic Relations Orders entered October 24, 2002, Respondent's Motion for Order Nunc Pro Tunc filed March 12, 2003, Order entered April 14, 2003, Respondent's Second Amended Complaint and Motion filed March 12, 2004, and Petitioner's Answer filed June 17, 2004. The Application was argued and submitted.

THE COURT FINDS:

1.    The Decree of Dissolution of Marriage entered January 4, 2002 was a consent Decree, approved by the parties and their respective counsel, entered by the Court, and from which no appeal was taken.

2.    The three Qualified Domestic Relations Orders entered October 24, 2002, were consent Orders approved by the parties and their respective counsel, were consistent with and facilitated the specific terms of the Decree, and were entered by the Court from which no appeal was taken.

3.    The Respondent's Second Amended Complaint and Motion to Vacate or Modify Judgment fails to state a claim upon which relief can be granted.

1

*Exhibit 2*

IT IS THEREFORE ORDERED that Respondent's Second Amended Complaint and Motion to Vacate or Modify Judgment are hereby dismissed and denied. Costs are taxed to the party incurring the same.

DATED: September ____ 15, 2005.

BY THE COURT:

*2. Mail Relabed*

_____

District Judge

PREPARED AND SUBMITTED BY:

THOMAS BLOUNT, Atty. #10358
BERTOLINI, SCHROEDER & BLOUNT
1620 Wilshire Drive, Suite 250
Bellevue, NE 68005
(402) 292-6200
ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the above and foregoing ORDER was served upon all attorneys of record, and any party appearing pro se, by mailing a copy thereof by regular United States mail, postage prepaid, this _15th_ day of September, 2005, to: David A. Domina and James F. Cann, Attorneys for Respondent, 2425 South 144th Street, Omaha, Nebraska, 68144.

_____

Thomas Blount

2

**DOMINALAW Group pc llo**

dominalaw.com

2425 S. 144th St.
Omaha NE 68144-3267

5000 Town Center Dr., Ste. 901
Southfield MI 48075

615 Boardman St.
Sheffield MA 01257

(402) 493-4100
(800) 245-5801

David A. Domina          NE NY MI MO
James F. Cann            NE
Claudia L. Stringfield-Johnson   NE IA
Timothy G. Himes Sr     NE SD
Michael C. Stumo        NE CT

September 23, 2005

Jim Keitges
jmkeitges@comcast.net

Re:   Keitges v. Keitges
      Doc. 997    Page 314
      Our File No. 05-0125

Mr. Keitges:

1.   As we discussed at approximately 3:30 p.m. on September 21, 2005, Judge
     Ashford has dismissed your Complaint. I learned about this approximately an hour
     and one-half before I called you. Apparently, a Motion to Dismiss was filed, and
     granted, but I was not given word of the hearing. I am presently investigating why
     this was so.

2.   The Court's dismissal of your case is based upon findings that the Decree and all
     QDRO's sought to be modified were entered by the Court based upon the consent
     of the parties, while they were represented by counsel. As we have previously
     written to you, this is the very same concern Judge Ashford raised in the earlier
     pretrial hearing we had in this matter. We have previously written to you on
     September 20, 2005, as well as the morning of September 21, 2005, voicing our
     concerns that the Judge's concern might very well have merit. We also informed
     you that modification of consent Decrees occurs only in very rare circumstance,
     and that we had serious doubts about the Court's ability to modify this Decree and
     these QDROs.

3.   We have filed a Motion to Alter or Amend the Judgment, which will give us an
     opportunity to present our argument to the District Court that your case should not
     have been dismissed. I have every reason to believe the Court will deny our
     Motion to Alter or Amend the Judgment, which will enable you to docket an appeal
     to the Nebraska Court of Appeals should you wish to do so. I cannot state that your
     prospects for success are good at all. Perhaps, though the Appellate Court will
     reverse the decision, or in the meantime, a resolution can be reached.

Exhibit 3

Jim Keitges
September 23, 2005
Page 2 of 2

4.   You need not be present at the hearing on the Motion to Alter or Amend the Judgment. I will inform you of the outcome. If you have any questions, please do not hesitate to contact me.

Respectfully,

*/s/ James F. Cann*

James F. Cann

JFC/jlm

663412

**MEMORANDUM**
www.dominalaw.com

To:   James Keitges and James F. Cann, Esq.

From: David A. Domina

Date: October 14, 2005

Re:   Keitges v. Keitges
      Evaluation of Potential Professional Negligence Claim Against Kelle Westland

1.    Jim Keitges, our client, confronts extraordinary circumstances. He became our
    client after the following series of events had transpired:

    11/28/01    Keitges case, filed previously, set for Dissolution of Marriage trial.
               Trial did not occur. Day long negotiations ensued. Agreement was
               eventually reached, and proven up on the record. Kelle Westland
               served as counsel.

    1/3/02    Decree is entered and requires supplemental Qualified Domestic
               Relations Order.

    10/23/02    QDROs entered after significant delays.

    3/28/03    Complaint filed by Westland for Mr. Keitges to modify Decree and
               QDROs. Note, this occurs 14 months after the 1/3/02 Decree was
               entered and, therefore, more than the one year permitted by statute
               for filing a Complaint to modify the Decree on fraud grounds.

    9/26/03    Complaint remains pending. On this date a settlement conference
               occurs. Westland represents Keitges. Oral agreement is reached.
               Oral agreement partially performed by Mr. Keitges. The status of
               agreement as reduced to a written record is unknown to me. Ms.
               Keitges' counsel, however, refuses to modify QDROs as orally
               agreed at conference.

    3/13/04    Westland amends Complaint. Adds claim for breach of September
               26, 2003 settlement conference agreement.

    5/25/04    Dennis Martin enters appearance as counsel for Keitges who has
               concerns that Westland has not represented him correctly.

    1/4/05    Westland files notice of trial scheduling event for 2/28/05.

*Exhibit 4*

Memorandum To: [Click here and type name]
[Click here and type date]
Page 2

2/28/05    Trial begins before Judge Derr.  D. Martin represents Keitges. Westland did not participate as she was scheduled to be a witness.

3/17/05    Judge Derr recuses himself due to Complaint filed by Mr. Keitges, or statement of intention to file complaint, with Judicial Qualifications Commission.

5/24/05    Pretrial conference occurs.  Westland and John Kinney appear for Keitges. Dennis Martin is deceased by this time.  Order is entered appointing actuarial witnesses to value pension.

6/3/05     Westland moves for leave to withdraw, recites Keitges has requested withdrawal.

6/6/05     Kinney seeks leave to withdraw.

6/16/05    Westland is granted leave to withdraw.

7/25/05    Domina Law enters appearance.  Case is before Judge Ashford. Motion is filed to vacate order appointing actuarial witness.

8/30/05    Hearing on Motion to Vacate Order Appointing Actuarial Witness. Judge sustains motion, and advises he does not believe he has authority to modify the decree or QDROS.

9/2/05     Motion is filed to determine Complaint fails to state claim upon which relief can be granted.

9/13/05    Motion is granted at hearing.  Case is dismissed.

9/23/05    Keitges files Motion to Alter or Amend Judgment of Dismissal.

10/12/05   Hearing occurs on motion to alter or amend judgment.  Judge denies motion.

672339

Memorandum To: [Click here and type name]
[Click here and type date]
Page 3

2.   Mr. Keitges is genuinely and appropriately concerned that:

   a.   He has been involved in Dissolution of Marriage proceedings now for five years and the Douglas County District Court system still has not resolved matters for him to his satisfaction.

   b.   He had a virtually impossible time getting matters resolved.  The core of the problem is Qualified Domestic Relations Orders governing tax deferred investments and his retirement pension account.  Also of concern is the timing of the Decree of Dissolution of Marriage.

### Westland's Acts for Consideration

3.   Questions concerning Kelle Westland's professional negligence have been raised.  Among these questions are:

   a.   Was Ms. Westland negligent because the QDROs were not entered concurrently with the Decree?  [It is commonplace for QDROs to follow the Decree and I do not believe this theory can be sustained.

   b.   Was Ms. Westland negligent when the QDROs eventually submitted were inconsistent with the settlement or stated objectives of the parties?  [This seems like an unlikely theory to succeed as the Judge entered the Orders, and the appropriate relief would have been to appeal.  Moreover, apparently the Orders were entered by mutual agreement.]

   c.   Did Westland appropriately file an action to attempt to enforce the settlement agreement with an Amended Complaint?  If not, should the filing have been made in a separate suit, or in an action for declaratory judgment?  [An action for a breach of contract does not seem to be at all consistent with one to dissolve a marriage and divide property.  I doubt the two can be joined and have not heard of it occurring.  However, if there are issues about what a Decree means, and it is vague, or requires explanation, then it is appropriate to institute a declaratory judgment proceeding.  It does not appear as though this is a case in which the Decree is vague and ambiguous; instead the client's contention is that the language of the decree and QDRO are incorrect.]

   d.   Did Westland commit professional negligence by failing to advise the client to appeal after the Decree or original QDROs were entered?  [It appears as though Westland may have failed to recognize that the Decree constituted

672339

Memorandum To: [Click here and type name]
[Click here and type date]
Page 4

an appealable final order, or that the QDROs constituted appealable final orders if, in fact, they became the operative documents later. However, if this conduct constituted negligence, it seems likely this negligence occurred no later than November 23, 2002 – ten days after the QDROs were entered.]

e.  Did Westland commit professional negligence by attempting to modify the Decree in an action where the District Court lacked subject matter jurisdiction to do so, as its 1/3/02 Decree had become final, or was its finality extended by the 10/23/02 QDROs? [Again the Complaint to modify the Decree does not seem appropriate. A District Court does not generally have subject matter jurisdiction to modify a Decree for simple equitable grounds. With rare exceptions where this rule is invoked in equity cases, strict protocol for time and timing procedures, to modify decrees, and statutory grounds for doing so must be invoked. This is true for dissolution cases. The decree modification process initiated by Westland appears to have been doomed to fail. It might have arguably extended the statute of limitations available to Mr. Keitges except that the modification process made him aware of the deficiencies in the decree and QDROs. On 5/25/04, this appearance was so substantial that he engaged new counsel. Even if Keitges was delayed in his discovery of the problem, it is clear that the one year extended statute of limitations for matters not discoverable has expired, and it seems to have reached its end no later than 5/24/05, and probably earlier.

## Conclusion

4.  The legal theories, and my brief comments about each of them, above, represent my general impressions. These are not final legal opinions, but are observations. This letter is written for case analysis purposes.

5.  I do not think professional negligence litigation against Kelle Westland is likely to succeed. I am dubious about whether an expert witness with compelling credentials can be engaged, and I am concerned that the case against Ms. Westland may fail for strict legal reasons because of the jurisdictional circumstances that are commented upon, briefly, above.

6.  We must decline representation of Mr. Keitges on a contingent fee basis. The prospects for success in professional negligence litigation, here, are grim at best, and impossible at worst. The proceeding we were engaged to take over was one over which the trial court clearly lacked subject matter jurisdiction at relevant

672339

Memorandum To: [Click here and type name]
[Click here and type date]
Page 5

times, and failed to state a claim. It seems completely clear to me that the damage here had been done long before the summer or autumn of 2005. Unfortunately, Mr. Keitges did not get his day in court in 2001. This leaves him feeling, inevitably, like he's never had his day in court – an understandable sentiment, and one that is understandably perplexing.

7.   The district court's recent dismissal of the matters pending before it for its failure to state a claim appears to be appropriate. Though this outcome is disappointing, it seems to me further, that the district court's subject matter jurisdiction to modify the Decree ceased when the Decree became a year old. I am aware of no meaningful exception to the one year statute of limitations governing attempts to modify or set aside judgments and decrees that would be applicable in this case.

DAD/rsa

672339

(comcast.

**From:** jmkeitges@comcast.net
**To:** JFC@dominalaw.com (James Cann)
**Subject:** Investigation results
**Date:** Thu, 03 Nov 2005 21:28:42 +0000

November 3, 2005

Mr. Cann:

This request concerns your letter to me dated September 23, 2005. In paragraph
one, you indicated that you were investigating why you were not notified of the
Motion to Dismiss or of the hearing that took place where the Motion was granted.
Please advise me of the results of your investigation as quickly as possible. I await
your response.

Sincerely,
James M. Keitges

[ Back ]

© 2006 Comcast Cable Communications, Inc. All rights reserved.

Exhibit 5

(comcast.

**From:** "James Cann" <jfc@dominalaw.com>
**To:** <jmkeitges@comcast.net>
**Cc:** "Emily Kucera" <EEK@dominalaw.com>
**Subject:** Re: Investigation results
**Date:** Mon, 7 Nov 2005 21:55:11 +0000

Mr. Keitges:

It appeared the Motion to Dismiss and the notice of hearing was mailed to our
office, but was not brought to David Domina's nor my attention. I believe I
reported this to you previously in one of our telephone conversations that followed
my letter.

You and we then agreed we would file a motion to alter or amend the judgment of
dismissal, which we did. It came on for hearing on October 13, 2005, but was
denied by the Judge. We have separately written to you on this point. Please let
me know if you have any other questions.


Respectfully,

James F. Cann, Lawyer
402-493-4100, Domina Law Group pc llo
www.dominalaw.com

This message is protected by 18 USC § 2510-21. Unauthorized usage is subject to
statutory sanctions.

>>> <jmkeitges@comcast.net> 11/3/2005 3:28:42 PM >>>
November 3, 2005

Mr. Cann:

This request concerns your letter to me dated September 23, 2005. In  paragraph
one, you indicated that you were investigating why you were not notified of the
Motion to Dismiss or of the hearing that took place where the Motion was granted.
Please advise me of the results of your investigation as quickly as possible. I await
your response.

Sincerely,
James M. Keitges


[ Back ]

© 2004 Comcast Cable Communications, Inc. All rights reserved.

Exhibit 6

James M. Keitges
5930 Bermuda Lane
Naples, FL 34119


January 24, 2006


Mr. Jay Cann
Domina Law Group
2425 S. 144th St.
Omaha, NE 68144-3267


Dear Mr. Cann:

On January 03, 2006 you were instructed to withdraw my appeal because I have no
confidence in your ability to prosecute my case before the Appellate Court. You clearly
displayed your ineptitude in failing to respond to a Motion to dismiss my case and you've
casually nullified the fact that you failed to appear at the scheduled hearing. Lacking your
representation on my behalf at that hearing, Judge Ashford had no choice but to dismiss.
You've attempted to play catch-up ever since the dismissal and ultimately forced my case
into the Appellate Court.

Furthermore, you required me to make a trip to Omaha for a three hour conference the
day prior to the scheduled trial date. This conference required three days of my time and
expense. You've inappropriately billed me for this time and numerous other alleged
services. You advised me of the dismissal of my case shortly after our meeting and the
afternoon prior to the trial date. Immediately upon your notification of dismissal and my
recognition of your complacent attitude regarding my future and the handling of the
issues for which you were retained, I should have terminated your engagement.

You and Mr. Domina have violated numerous Rules contained in the Nebraska Rules of
Professional Conduct and I intend to file a complaint with the Supreme Court
Disciplinary Council. With reference to my numerous letters and emails to you, it is
apparent that you had no intention of resolving the issues in this case. In my initial
interview with Mr. Domina, he was specifically advised that there would be no
negotiations with Mark Bertolini or Tom Blount. Your long trail of letters and emails are
filled with excuses as to why you are unable to bring to resolution any of the issues in this
case. Attempting to resolve one QDRO issue through negotiations is contrary to why you
were retained. In fact, the ESP QDRO that you were attempting to negotiate had already
been signed by all parties and entered into the Court record. I was shocked to learn that
you knew this QDRO was completed and yet you still attempted to negotiate. Your
reasoning for filing the appeal as leverage to negotiate obviously backfired as
Blount/Bertolini refused to sign off on the combined QDRO that you prepared.

Exhibit 7

I indicated to you as early as October, 2005, that my financial condition would become perilous because of the November 16, 2005 forty percent pay reduction. I told you several times that it was critical that the RSP and ESP QDRO's be entered and distributed and a petition to modify alimony and child support be filed ASAP. You were provided with adequate documentation to move forward with the modification petition and you refused to assist me, stating that there is no basis for a claim. This is the typical response I've received from you on all issues, including your statements that there are no basis arguments to support enforcing my Divorce Decree on several issues.

Mr. Cann, you state in your email to me on December 30, 2005 that you see no basis for an order to stop Cheryl Keitges from receiving the premature withdrawal of pension funds. There are three reasons to form a basis.

1. The primary issue in the case that was appealed pertained to the distribution of these funds and they should have been secured until resolution.
2. Cheryl Keitges is withdrawing funds from my pension that do not belong to her.
3. Northwest Airlines was advised not to release these funds until the case was settled.

The above statement by you regarding the pension fund clearly shows that you've never taken the time to study what this case was about. The second statement you've made that further promotes the allegation that you did not understand this case, occurs in your letter to me on December 23, 2005(p1 #4). Are you not aware that this is one of the three primary issues in the case that was appealed and would have been addressed in your brief to the Appellate Court?

Furthermore, you did no preparation for my case before the Appellate Court and in fact you didn't even interview the key witnesses in my case in order to provide information for your brief. Your hopes obviously rested on my withdrawal of the appeal pending your appeasement of Tom Blount and Mark Bertolini through the illegitimate transfer of more of my assets.

More than two months have elapsed since my forty percent pay reduction while simultaneously Cheryl Keitges has prematurely started withdrawal from my pension and has received over ten thousand dollars to date. All of this and you continue to state that we have no basis for any claims. I continue to be mystified by your complete lack of professional conduct in the handling of any of the issues in my case.

I am now left with the additional time and expense of having to interview several Attorneys and start over. You've billed me nearly twenty thousand dollars for services but you've failed to accomplish even the simplest of tasks. You haven't provided any services that are of any benefit to me or my case. I intend to seek restitution for your failure to appear at the hearing to dismiss my case and the subsequent damages. I'm now aware of the statue of limitations for Attorneys and I intend to file a claim within the allotted timeframe. There's no further need to address the damages and mental anguish

you've caused and how you've left me totally exposed and without representation since July, 2005.

Bottom line, **YOU'RE FIRED!!!**

Sincerely,

*James Keitges*

James M. Keitges

JMK/ao

Ps.  Please forward my entire file to the address as shown above.

**DOMINA LAW GROUP pc**

dominalaw.com

2425 S. 144th St.
Omaha NE 68144-3267

5000 Town Center Dr., Ste. 901
Southfield MI 48075

615 Boardman St.
Sheffield MA 01257

*(800) 245-5801*
*(402) 493-4100*

David A. Domina          NE NY MI MO
James F. Cann            NE
Claudia L. Stringfield-Johnson   NE IA
Timothy G. Himes Sr.     NE SD
Michael C. Stumo         CT

Jim Keitges
P O Box 771420
Naples, Fl 34107-1420

August 11, 2005
2668-050125
Bill # 2248

For Legal Services Rendered Through 07/31/05

CLIENT:     Jim Keitges
MATTER:     Keitges, Jim v. Keitges
            CMC/0
            Unit billing

### PROFESSIONAL SERVICES

| Date | | Description |
|------|------|-------------|
| 07/08/05 | NB** | Preparation of a letter to the client enclosing our Unit Fee Agreement. |
| 07/21/05 | DAD | Review of materials, work on case |
| 07/22/05 | NB** | Preparation of a letter to the client thanking him for his letter and materials sent to us and stating we will be actively involved in this case. |
| 07/25/05 | JFC | Telephone Conference to clerk of Dist. Ct. |
| 07/25/05 | CMC | Review of correspondence |
| 07/25/05 | DAD | Preparation of a letter to Douglas County District Court enclosing Entry of Appearance and Respondent's Motion to 1-Vacate Order Concerning Appointment of Actuarial Expert 2-Conduct Status Conference & Enter Progression Order 3-Schedule Trial & Conclude Case. |
| 07/25/05 | DAD | Preparation of Entry of Appearance. |
| 07/25/05 | DAD | Preparation of Respondent's Motion to 1-Vacate Order Concerning Appointment of Actuarial Expert 2-Conduct Status Conference & Enter Progression Order 3-Schedule Trial & Conclude Case. |
| 07/29/05 | JFC | Review of file. |

| | | | |
|---|---|---|---|
| **Total Professional Services** | | **3.80** | **$831.00** |

### PROFESSIONAL SERVICES SUMMARY

| Code | Name | Units | Amount |
|------|------|-------|--------|

Continued . . .

*Exhibit 8*

Client:     Jim Keitges                                    August 11, 2005
                                                                    Page 2

## PROFESSIONAL SERVICES SUMMARY Continued...

| Code | Name | Units | Amount |
|------|------|-------|--------|
| *NON | Non-billable time | 0.80 | 144.00 |
| CMC | Christine Carter - Trial Preparation Manager | 0.30 | 33.00 |
| DAD | David A Domina - Lawyer | 2.30 | 690.00 |
| JFC | Jay F Cann - Lawyer | 0.40 | 108.00 |
| | **Total Professional Services** **Units** | **3.80** | **$831.00** |

### DISBURSEMENTS

| Date | Description | Amount |
|------|-------------|--------|
| 07/20/05 | Postage | 1.20 |
| 07/20/05 | Photocopy Charges | 1.80 |
| | **Total Disbursements** | **$3.00** |

**CURRENT BILL TOTAL AMOUNT DUE**                    $      834.00

credit - 500.00 (retainer)

$ 334.00 due

$334.⁰⁰  Pd mastercard #5490
            8-27-05

Continued . . .

**DOMINA LAW GROUP pc**

dominalaw.com

2425 S. 144th St.
Omaha NE 68144-3267

5000 Town Center Dr., Ste. 901
Southfield MI 48075

615 Boardman St.
Sheffield MA 01257

(800) 245-5801
(402) 493-4100

David A. Domina          NE NY MI MO
James F. Cann           NE
Claudia L. Stringfield-Johnson   NE IA
Timothy G. Himes Sr.    NE SD
Michael C. Stumo        CT

Jim Keitges
P O Box 771420
Naples, Fl 34107-1420

September 9, 2005
2668-050125
Bill # 2384

For Legal Services Rendered Through 08/31/05

CLIENT:     Jim Keitges
MATTER:     Keitges, Jim v. Keitges
            EEK/0
            Unit billing

## PROFESSIONAL SERVICES

| Date | | Description |
|------|------|-------------|
| 07/12/05 | DAD | |
| 08/01/05 | JFC | Telephone Conference from opposing counsel. |
| 08/08/05 | MSH | Preparation Work preparation re: organizing materials received from the client into the file. |
| 08/10/05 | JFC | Preparation of notice of hearing. |
| 08/10/05 | JFC | Telephone Conference with clerk of court. |
| 08/10/05 | JFC | E-mail to client. |
| 08/10/05 | JFC | Conference with client. |
| 08/10/05 | JFC | Preparation of letter to Clerk enclosing Notice of Hearing. |
| 08/10/05 | JFC | Preparation of Notice of Hearing regarding Defendant's Motion to Vacate Order Concerning Appoitntment of Actuarial Expert, Conduct Status Conference and Enter Progression Order, and Schedule Trial and Conclude Case. |
| 08/11/05 | JFC | Telephone Conference with DAD. |
| 08/18/05 | JFC | Review of letter from client enclosing outline of funds |
| 08/22/05 | JFC | E-mail from client. |
| 08/23/05 | JFC | Preparation for hearing.  Obtain and review District Court file. |
| 08/23/05 | JFC | E-mail from client. |
| 08/30/05 | JFC | Court Appearance and preparation for hearing on motion to vacate actuarial expert. |

**Total Professional Services**          **9.90**      **$2,661.00**

Continued . . .

Exhibit 9

Client:          Jim Keitges                                          September 9, 2005
                                                                               Page 2

### PROFESSIONAL SERVICES SUMMARY

| Code | Name | | Units | Amount |
|------|------|---|-------|--------|
| DAD | David A Domina - Lawyer | | 0.00 | 500.00 |
| JFC | Jay F Cann - Lawyer | | 6.70 | 1,809.00 |
| MSH | Mark S Hunt - Archivist | | 3.20 | 352.00 |
| | **Total Professional Services** | **Units** | **9.90** | **$2,661.00** |

### DISBURSEMENTS

| Date | Description | Amount |
|------|-------------|--------|
| 08/10/05 | Telephone Charges for call to client. | 30.60 |
| 08/10/05 | Photocopy Charges | 0.90 |
| 08/10/05 | Postage | 0.74 |
| 08/23/05 | Photocopy Charges | 11.85 |
| | FAX Charges - Number of Outgoing Page(s) thru 08/31/05 | 0.50 |
| | **Total Disbursements** | **$44.59** |

| | | |
|---|---|---|
| SUB TOTAL | | $ 2,705.59 |
| Prepaid Funds Applied | | -500.00 |
| Prepaid Funds Remaining: $0.00 | | |
| **CURRENT BILL TOTAL AMOUNT DUE** | | **$ 2,205.59** |
| Past Due Balance | | 500.00 |
| **TOTAL AMOUNT DUE** | | **$2,705.59** |

Continued . . .

# DOMINA LAW GROUP pc

**dominalaw.com**

2425 S. 144th St.
Omaha NE  68144-3267

5000 Town Center Dr., Ste. 901
Southfield MI  48075

615 Boardman St.
Sheffield MA 01257

*(800) 245-5801*
*(402) 493-4100*

| | |
|---|---|
| David A. Domina | NE NY MI MO |
| James F. Cann | NE |
| Claudia L. Stringfield-Johnson | NE IA |
| Timothy G. Himes Sr. | NE SD |
| Michael C. Stumo | CT |

Jim Keitges
P O Box 771420
Naples, Fl 34107-1420

October 11, 2005
2668-050125
Bill # 2593

For Legal Services Rendered Through 09/30/05

CLIENT:     Jim Keitges
MATTER:    Keitges, Jim v. Keitges
                  EEK/0
                  Unit billing

## PROFESSIONAL SERVICES

| Date | | Description |
|---|---|---|
| 08/23/05 | JFC | Conference with Jim Keitges and review and study of Outline of Funds.  Review of Court file for core pleadings. |
| 09/02/05 | JFC | Telephone Conference with client. |
| 09/06/05 | JFC | Telephone Conference with Kelle Westland. |
| 09/14/05 | EEK | Preparation of profiling to AIM. |
| 09/16/05 | JFC | Review of letter from CitiStreet Plan Administration regarding retirement plan |
| 09/16/05 | DAD | Review of Order dismissing Respondent's Second Amended Complaint. |
| 09/16/05 | EEK | Preparation of profiling to AiM. |
| 09/19/05 | EEK | Review of dictation. |
| 09/20/05 | DAD | Preparation of letter to client regarding concerns |
| 09/20/05 | JFC | Review of documents from client |
| 09/20/05 | JFC | Preparation for trial. |
| 09/20/05 | EEK | Preparation of organizing and reviewing file. |
| 09/21/05 | JFC | Preparation for trial and determine strategy.  Telephone conference with witness and DAD and opposing counsel. |
| 09/21/05 | JFC | Conference with client.  Determine strategy for going forward. |
| 09/22/05 | EEK | Review of documents. |
| 09/23/05 | MJM | Travel to courthouse |
| 09/23/05 | EEK | Travel to Courthouse to file Motion to Amend. |
| 09/23/05 | EEK | Preparation of profiling to AIM. |
| 09/23/05 | EEK | Review of dictation. |

Continued . . .

Exhibit 10

Client:        Jim Keitges                                        October 11, 2005
                                                                        Page 2

## PROFESSIONAL SERVICES Continued...

| Date | | Description |
|------|------|-------------|
| 09/23/05 | JFC | Preparation of letter to client regarding Motion to Alter or Amend Judgment |
| 09/23/05 | JFC | Preparation of Motion to Alter or Amend Judgment |
| 09/23/05 | JFC | Preparation of research memo to file on Motion to Dismiss |
| 09/27/05 | DAD | Preparation of letter to Jim Keitges regarding email he sent to Jay Cann and telephone conference with client |
| 09/27/05 | EEK | Preparation of profiling to AIM. |

| | | |
|---|---|---|
| **Total Professional Services** | **24.60** | **$5,982.00** |

### PROFESSIONAL SERVICES SUMMARY

| Code | Name | Units | Amount |
|------|------|-------|--------|
| DAD | David A Domina - Lawyer | 4.30 | 1,290.00 |
| EEK | Emily Kucera - Trial Preparation Manager | 3.30 | 198.00 |
| JFC | Jay F Cann - Lawyer | 16.40 | 4,428.00 |
| MJM | Melissa Macloskey - Trial Preparation Manager | 0.60 | 66.00 |
| **Total Professional Services** | **Units** | **24.60** | **$5,982.00** |

### DISBURSEMENTS

| Date | Description | Amount |
|------|-------------|--------|
| 09/24/04 | Client Expense Advance Travel to Courthouse | 5.61 |
| 09/08/05 | Westlaw Research Charges | 390.60 |
| 09/15/05 | FAX Charges - Number of Incoming Page(s) | 0.60 |
| 09/15/05 | FAX Charges - Number of Incoming Page(s) | 0.15 |
| 09/21/05 | Telephone Charges for calls to client. | 7.20 |
| 09/27/05 | Postage | 0.37 |
| 09/27/05 | Photocopy Charges | 0.30 |
| 09/30/05 | Photocopy Charges Printed file index | 0.15 |
| | FAX Charges - Number of Outgoing Page(s) thru 09/30/05 | 0.75 |
| | **Total Disbursements** | **$405.73** |

| | |
|---|---|
| **CURRENT BILL TOTAL AMOUNT DUE** | **$ 6,387.73** |
| Past Due Balance | 2,705.59 |
| **TOTAL AMOUNT DUE** | **$9,093.32** |

Continued . . .

2425 S. 144th St.
Omaha NE 68144-3267

5000 Town Center Dr., Ste. 901
Southfield MI 48075

## DOMINA LAW GROUP PC

615 Boardman St.
Sheffield MA 01257

**dominalaw.com**

*(402) 493-4100*
*(800) 245-5801*

David A. Domina    NE NY MI MO
James F. Cann    NE
Claudia L. Stringfield   NE IA
Richard F. Hitz    NE
Timothy G. Himes Sr.   NE SD
Michael C. Stumo    CT

October 5, 2005

Jim Keitges
P O Box 771420
Naples, Fl 34107-1420

**Statement**

| Date | | Bill Number/Description | Fees | Costs | Bill Amt. | Paid Amt. | Balance |
|------|---|-------------------------|------|-------|-----------|-----------|---------|
| 050125 - Keitges, Jim v. Keitges | | | | | | | |
| 12/30/99 | B | 0 | | | | | 0.00 |
| | | **Matter Totals** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 050125 - Keitges, Jim v. Keitges | | | | | | | |
| 07/12/05 | R | 7382 / pymt from J Keitges | | | | 500.00 | -500.00 |
| 07/12/05 | R | 7382 / Reversed: pymt from J Keitges | | | | -500.00 | 0.00 |
| 08/11/05 | B | 2248 | 831.00 | 3.00 | 834.00 | | 834.00 |
| 09/01/05 | R | 8317 / Master card pymt from Jim Keitges | | | | 334.00 | 500.00 |
| 09/09/05 | B | 2384 | 2,661.00 | 44.59 | 2,705.59 | | 3,205.59 |
| 09/09/05 | R | 0 / Bill Prepaid Transfer | | | | 500.00 | 2,705.59 |
| | | **Matter Totals** | 3,492.00 | 47.59 | 3,539.59 | 834.00 | 2,705.59 |
| | | **Client Totals** | 3,492.00 | 47.59 | 3,539.59 | 834.00 | 2,705.59 |

**Total Balance Due**      **2,705.59**

*Pd w/ m.c.*

# DOMINA LAW GROUP pc

dominalaw.com

2425 S. 144th St.
Omaha NE 68144-3267

5000 Town Center Dr., Ste. 901
Southfield MI 48075

615 Boardman St.
Sheffield MA 01257

*(800) 245-5801*
*(402) 493-4100*

| David A. Domina | NE NY MI MO |
| James F. Cann | NE |
| Claudia L. Stringfield-Johnson | NE IA |
| Timothy G. Himes Sr. | NE SD |
| Michael C. Stumo | CT |

Jim Keitges
P O Box 771420
Naples, Fl 34107-1420

November 16, 2005
2668-050125
Bill # 2817

For Legal Services Rendered Through 10/31/05

CLIENT:    Jim Keitges
MATTER:    Keitges, Jim v. Keitges
           EEK/0
           Unit billing

## PROFESSIONAL SERVICES

| Date | | Description |
|------|------|-------------|
| 10/03/05 | NB** | Review of Notice of Order of Dismissal |
| 10/11/05 | CLS | Review of file; conference with JFC; prepare for hearing |
| 10/11/05 | JFC | Conference with CLS for hearing. |
| 10/12/05 | CLS | Preparation for hearing; attend hearing; travel; discussion with OPC |
| 10/12/05 | NB** | Preparation of profiling to AIM. |
| 10/12/05 | NB** | Preparation of memo to DAD. |
| 10/12/05 | JFC | Telephone Conference with CLS in advance of court appearance on motion to alter or amend judgment. |
| 10/13/05 | DAD | Preparation of Memorandum to Mr. Keitges and Attorney Cann summarizing the events and declining representation on a contingent fee basis. |
| 10/14/05 | JFC | Preparation of letter to client regarding further action |
| 10/26/05 | DAD | Preparation Letter to client regarding 10/17/05 letter. |
| 10/26/05 | DAD | Preparation Letter to Bryan Hill, Esq. forwarding (2) executed Releases. |
| 10/28/05 | DAD | Preparation of letter to client regarding conference to discuss appeal and other matters |

| | | | |
|---|---|---|---|
| **Total Professional Services** | | **10.10** | **$2,544.00** |

## PROFESSIONAL SERVICES SUMMARY

| Code | Name | Units | Amount |
|------|------|-------|--------|

Continued . . .

*Exhibit 11*

Client:    Jim Keitges                                November 16, 2005
                                                                 Page 2

### PROFESSIONAL SERVICES SUMMARY Continued...

| Code | Name | | Units | Amount |
|------|------|---|-------|--------|
| *NON | Non-billable time | | 0.80 | 174.00 |
| CLS | Claudia L Stringfield - Lawyer | | 2.80 | 630.00 |
| DAD | David A Domina - Lawyer | | 5.30 | 1,590.00 |
| JFC | Jay F Cann - Lawyer | | 1.20 | 324.00 |
| | **Total Professional Services** | **Units** | **10.10** | **$2,544.00** |

### DISBURSEMENTS

| Date | Description | Amount |
|------|-------------|--------|
| 10/03/05 | Photocopy Charges Printed file index | 0.15 |
| 10/11/05 | Photocopy Charges Printed pleading log | 0.45 |
| 10/12/05 | Mileage Travel to Court; parking | 17.63 |
| | **Total Disbursements** | **$18.23** |

| | | |
|---|---|---|
| **CURRENT BILL TOTAL AMOUNT DUE** | $ | **2,562.23** |
| Past Due Balance | | 6,387.73 |
| **TOTAL AMOUNT DUE** | | **$8,949.96** |

Continued . . .

# DOMINA LAW GROUP PC

**dominalaw.com**

2425 S. 144th St.
Omaha NE 68144-3267

5000 Town Center Dr., Ste. 901
Southfield MI 48075

615 Boardman St.
Sheffield MA 01257

*(402) 493-4100*
*(800) 245-5801*

| David A. Domina | NE NY MI MO |
| James F. Cann | NE |
| Claudia L. Stringfield | NE IA |
| Richard F. Hitz | NE |
| Timothy G. Himes Sr. | NE SD |
| Michael C. Stumo | CT |

December 28, 2005

Jim Keitges
P O Box 771420
Naples, Fl 34107-1420

### Statement

| Date | | Bill Number/Description | Fees | Costs | Bill Amt. | Paid Amt. | Balance |
|------|---|-------------------------|------|-------|-----------|-----------|---------|
| 050125 - Keitges, Jim v. Keitges | | | | | | | |
| 12/30/99 | B | 0 | | | | | 0.00 |
| | | **Matter Totals** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |
| 050125 - Keitges, Jim v. Keitges | | | | | | | |
| 07/12/05 | R | 7382 / pymt from J Keitges | | | | 500.00 | -500.00 |
| 07/12/05 | R | 7382 / Reversed: pymt from J Keitges | | | | -500.00 | 0.00 |
| 08/11/05 | B | 2248 | 831.00 | 3.00 | 834.00 | | 834.00 |
| 09/01/05 | R | 8317 / Master card pymt from Jim Keitges | | | | 334.00 | 500.00 |
| 09/09/05 | B | 2384 | 2,661.00 | 44.59 | 2,705.59 | | 3,205.59 |
| 09/09/05 | R | 0 / Bill Prepaid Transfer | | | | 500.00 | 2,705.59 |
| 10/03/05 | R | 0 / pymt from Jim Keitges by MC | | | | 2,705.59 | 0.00 |
| 10/11/05 | B | 2593 | 5,982.00 | 405.73 | 6,387.73 | | 6,387.73 |
| 11/16/05 | B | 2817 | 2,544.00 | 18.23 | 2,562.23 | | 8,949.96 |
| 12/12/05 | B | 2846 | 4,239.00 | 206.72 | 4,445.72 | | 13,395.68 |
| | | **Matter Totals** | **16,257.00** | **678.27** | **16,935.27** | **3,539.59** | **13,395.68** |
| | | **Client Totals** | **16,257.00** | **678.27** | **16,935.27** | **3,539.59** | **13,395.68** |

**Total Balance Due**                                                      **13,395.68**

*Exhibit 12*

# DOMINA LAW GROUP pc

**dominalaw.com**

2425 S. 144th St.
Omaha NE 68144-3267

5000 Town Center Dr., Ste. 901
Southfield MI 48075

615 Boardman St.
Sheffield MA 01257

*(800) 245-5801*
*(402) 493-4100*

| | |
|---|---|
| David A. Domina | NE NY MI MO |
| James F. Cann | NE |
| Claudia L. Stringfield-Johnson | NE IA |
| Timothy G. Himes Sr. | NE SD |
| Michael C. Sturno | CT |

Jim Keitges
P O Box 771420
Naples, Fl 34107-1420

January 10, 2006
2668-050125
Bill # 3104

For Legal Services Rendered Through 12/31/05

CLIENT:     Jim Keitges
MATTER:     Keitges, Jim v. Keitges
            EEK/0
            Unit billing

## PROFESSIONAL SERVICES

| Date | | Description |
|---|---|---|
| 12/05/05 | JFC | Preparation of revisions to QDRO. |
| 12/05/05 | JFC | Preparation of letter to opposing counsel. |
| 12/06/05 | NB** | Preparation of AIM profiles. |
| 12/06/05 | NB** | Preparation of updates to document list. |
| 12/07/05 | JFC | E-mail to Northwest Airlines regarding QDRO. |
| 12/07/05 | JFC | E-mail from Northwest Airlines. |
| 12/07/05 | JFC | E-mail from client. |
| 12/07/05 | JFC | Telephone Conference with client. Discussed malpractice case and concerns, as well as issues pertaining to QDROS and pension account. |
| 12/07/05 | NB** | Preparation of AIM profiles. |
| 12/08/05 | JFC | Telephone Conference with client. |
| 12/08/05 | JFC | Preparation of letter to client regarding involvement at this point |
| 12/13/05 | NB** | Review of letter from client regarding filing suit against Bertolini and Cheryl Keitges |
| 12/13/05 | DAD | Review of correspondence from James Keitges regarding settlement conference which should have settled all issues; and his request for further review of issues. |
| 12/14/05 | NB** | Review of Invoice of Supreme Court for transcript |
| 12/14/05 | JFC | Preparation of letter to client regarding matters on which we are willing to be engaged |
| 12/16/05 | NB** | Preparation of AIM profiles. |
| 12/19/05 | NB** | Review of letter from Court of Appeals regarding receipt of transcript |
| 12/23/05 | JFC | Preparation of letter to client. |

Continued . . .

*Exhibit 13*

Client:      Jim Keitges                                              January 10, 2006
                                                                              Page 2

### PROFESSIONAL SERVICES Continued...

| Date | | Description |
|------|---|-------------|
| 12/27/05 | JFC | E-mail to client. |
| 12/27/05 | JFC | Review of Northwest Airlines correspondence and QDRO with revisions |
| 12/30/05 | JFC | Preparation of letter emailed to client regarding Northwest Airlines' December 22 letter |

| | | | |
|---|---|---|---|
| **Total Professional Services** | | **8.40** | **$1,488.00** |

### PROFESSIONAL SERVICES SUMMARY

| Code | Name | | Units | Amount |
|------|------|---|-------|--------|
| *NON | Non-billable time | | 2.90 | 367.00 |
| DAD | David A Domina - Lawyer | | 0.10 | 30.00 |
| JFC | Jay F Cann - Lawyer | | 5.40 | 1,458.00 |
| **Total Professional Services** | | **Units** | **8.40** | **$1,488.00** |

### DISBURSEMENTS

| Date | Description | Amount |
|------|-------------|--------|
| 12/08/05 | Telephone Charges for call to client. | 3.60 |
| 12/15/05 | Client Expense Advance Transcript fee | 27.10 |
| 12/19/05 | Photocopy Charges | 0.30 |
| 12/19/05 | Postage | 0.37 |
| 12/30/05 | Westlaw Research Charges | 108.36 |
| | FAX Charges - Number of Outgoing Page(s) thru 12/31/05 | 3.00 |
| | **Total Disbursements** | **$142.73** |

| | | |
|---|---|---|
| **CURRENT BILL TOTAL AMOUNT DUE** | **$** | **1,630.73** |
| Past Due Balance | | 13,395.68 |
| **TOTAL AMOUNT DUE** | | **$15,026.41** |

Continued . . .

**DOMINALAW Group pc llo**

dominalaw.com

2425 S. 144th St.
Omaha NE 68144-3267

355 S Old Woodward Ave.
Suite 240
Birmingham MI 48009

*(402) 493-4100*
*(248) 723-9818*
*(800) 245-5801*

David A. Domina          NE NY MI MO
Eileen Reilly Buzzello   NE
Linda S. Christensen     NE
Brian E. Jorde           MI NE
Elias T. Xenos           MI NE

May 1, 2008

Jim Keitges
P O Box 771420
Naples, Fl 34107-1420

## Statement

| Date | | Bill Number/Description | Fees | Costs | Bill Amt. | Paid Amt. | Balance |
|------|---|------------------------|------|-------|-----------|-----------|---------|
| 050125 - Keitges, Jim v. Keitges | | | | | | | |
| 12/30/99 | B | 0 | | | | | 0.00 |
| | | **Matter Totals** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |
| 050125 - Keitges, Jim v. Keitges | | | | | | | |
| 07/12/05 | R | 7382 / pymt from J Keitges | | | | 500.00 | -500.00 |
| 07/12/05 | R | 7382 / Reversed: pymt from J Keitges | | | | -500.00 | 0.00 |
| 08/11/05 | B | 2248 | 831.00 | 3.00 | 834.00 | | 834.00 |
| 09/01/05 | R | 8317 / Master card pymt from Jim Keitges | | | | 334.00 | 500.00 |
| 09/09/05 | B | 2384 | 2,661.00 | 44.59 | 2,705.59 | | 3,205.59 |
| 09/09/05 | R | 0 / Bill Prepaid Transfer | | | | 500.00 | 2,705.59 |
| 10/03/05 | R | 0 / pymt from Jim Keitges by MC | | | | 2,705.59 | 0.00 |
| 10/11/05 | B | 2593 | 5,982.00 | 405.73 | 6,387.73 | | 6,387.73 |
| 11/16/05 | B | 2817 | 2,544.00 | 18.23 | 2,562.23 | | 8,949.96 |
| 12/12/05 | B | 2846 | 4,239.00 | 206.72 | 4,445.72 | | 13,395.68 |
| 01/10/06 | B | 3104 | 1,488.00 | 142.73 | 1,630.73 | | 15,026.41 |
| 02/14/06 | B | 3246 | 189.00 | 3.13 | 192.13 | | 15,218.54 |
| 03/13/06 | B | 3420 | | 159.82 | 159.82 | | 15,378.36 |
| 04/13/06 | B | 3583 | | 0.75 | 0.75 | | 15,379.11 |
| 04/19/06 | R | 600306765 / Refund Clerk of the DCDC | | | | 75.00 | 15,304.11 |
| 07/11/06 | B | 4143 | | | | | 15,304.11 |
| | | **Matter Totals** | **17,934.00** | **984.70** | **18,918.70** | **3,614.59** | **15,304.11** |
| | | **Client Totals** | **17,934.00** | **984.70** | **18,918.70** | **3,614.59** | **15,304.11** |

**Total Balance Due**                                    **15,304.11**

Exhibit 14

**DOMINALAW Group pc llo**

dominalaw.com

2425 S. 144th St.
Omaha NE 68144-3267

355 S Old Woodward Ave.
Suite 240
Birmingham MI 48009

*(402) 493-4100*
(248) 723-9818
(800) 245-5801

David A. Domina    NE NY MI MO
Eileen Reilly Buzzello   NE
Linda S. Christensen   NE
Brian E. Jorde    MI NE
Terry A. White    IA NE

June 3, 2008

Jim Keitges
P O Box 771420
Naples, Fl 34107-1420

**Statement**

| Date | | Bill Number/Description | Fees | Costs | Bill Amt. | Paid Amt. | Balance |
|---|---|---|---|---|---|---|---|
| 050125 - Keitges, Jim v. Keitges | | | | | | | |
| 12/30/99 | B | 0 | | | | | 0.00 |
| | | **Matter Totals** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |
| 050125 - Keitges, Jim v. Keitges | | | | | | | |
| 07/12/05 | R | 7382 / pymt from J Keitges | | | | 500.00 | -500.00 |
| 07/12/05 | R | 7382 / Reversed: pymt from J Keitges | | | | -500.00 | 0.00 |
| 08/11/05 | B | 2248 | 831.00 | 3.00 | 834.00 | | 834.00 |
| 09/01/05 | R | 8317 / Master card pymt from Jim Keitges | | | | 334.00 | 500.00 |
| 09/09/05 | B | 2384 | 2,661.00 | 44.59 | 2,705.59 | | 3,205.59 |
| 09/09/05 | R | 0 / Bill Prepaid Transfer | | | | 500.00 | 2,705.59 |
| 10/03/05 | R | 0 / pymt from Jim Keitges by MC | | | | 2,705.59 | 0.00 |
| 10/11/05 | B | 2593 | 5,982.00 | 405.73 | 6,387.73 | | 6,387.73 |
| 11/16/05 | B | 2817 | 2,544.00 | 18.23 | 2,562.23 | | 8,949.96 |
| 12/12/05 | B | 2846 | 4,239.00 | 206.72 | 4,445.72 | | 13,395.68 |
| 01/10/06 | B | 3104 | 1,488.00 | 142.73 | 1,630.73 | | 15,026.41 |
| 02/14/06 | B | 3246 | 189.00 | 3.13 | 192.13 | | 15,218.54 |
| 03/13/06 | B | 3420 | | 159.82 | 159.82 | | 15,378.36 |
| 04/13/06 | B | 3583 | | 0.75 | 0.75 | | 15,379.11 |
| 04/19/06 | R | 600306765 / Refund Clerk of the DCDC | | | | 75.00 | 15,304.11 |
| 07/11/06 | B | 4143 | | | | | 15,304.11 |
| | | **Matter Totals** | **17,934.00** | **984.70** | **18,918.70** | **3,614.59** | **15,304.11** |
| | | **Client Totals** | **17,934.00** | **984.70** | **18,918.70** | **3,614.59** | **15,304.11** |

**Total Balance Due**      **15,304.11**

*Exhibit 15*

**DOMINALAW Group pc llo**

dominalaw.com

2425 S. 144th St.
Omaha NE 68144-3267

5000 Town Center Dr., Ste. 901
Southfield MI 48075

615 Boardman St.
Sheffield MA 01257

(402) 493-4100
(800) 245-5801

David A. Domina          NE NY MI MO
James F. Cann            NE
Claudia L. Stringfield-Johnson   NE IA
Timothy G. Himes Sr      NE SD
Michael C. Stumo         NE CT

September 20, 2005

Jim Keitges
jmkeitges@comcast.net

Re:   *Keitges v. Keitges*
      Douglas County District Court 997/0314
      Our File No. 05-0125

Mr. Keitges:

1.   We have had many conversations in recent months about your case, the matters
     pending before the Court, and upcoming circumstances associated with your suit.
     Since becoming your counsel we filed a July 26, 2005 Respondent's Motion to (1)
     Vacate Order Concerning Appointment of Actuarial Expert, (2) Conduct Status
     Conference and Enter Progression Order & (3) Schedule Trial on Complete Case.

2.   The Motion has successfully reinvigorated activity in the case.

3.   As you know, your dissolution proceeding is now docketed with the third District
     Judge assigned responsibility for it. Honorable Stephen Davis strongly urged
     settlement discussions, which occurred. Honorable J. Derr recused himself after
     hearing you intended to file a Complaint with the Judicial Qualification
     Commission against him. Now Honorable Mark Ashford is responsible for
     deciding the case. Judge Ashford clearly does not want to delve deeply into the
     case's unpleasantries.

4.   Your suit is pending on these pleadings:

     a. Second Amended Complaint and Motion to Vacate or Modify Judgment
        Pursuant to *Neb Rev Stat* § 25-2001 filed March 12, 2004;

*Exhibit 16*

Jim Keitges
March 13, 2006
Page 2

      b. Answer filed June 17, 2004.

5.    A chronology of events would be helpful. These appear to be the relevant matters:

| | |
|---|---|
| 11/18/01 | Trial scheduled, but settlement negotiations resulted in a stipulated decree. |
| 01/04/02 | Decree of Dissolution entered, providing that your ex-wife would receive 39.4% of your Northwest Airlines retirement savings plan. |
| 01/02 – 10/02 | Correspondence between counsel |
| 10/23/02 | QDRO signed. I have noted that the 10/23/02 QDRO was "approved as to form and content" by your ex-wife, her attorney, your attorney, and you. |
| 02/19/03 | Northwest Airlines "letter" referred to in your Second Amended Complaint to Modify. However, the letter is not attached. The NWA letter was attached to the original Complaint to Modify.  It notes that a comment time was given to attorneys involved in this matter and none were received. It also notes that Northwest Airlines, as plan administrator determined that the QDRO submitted to it "is a Qualified Domestic Relations Order subject to the following understanding:<br><br>    "Section 1.4 of the Order states that the Order is the tax qualified defined pension plan know by the name: Northwest Airline Retirement Savings Plan for Pilot Employees (formerly sometimes known as the Northwest Airline, Inc. Retirement Savings Plan for Pilot Employees).   Northwest Airlines Retirement Savings Plan for Pilots is a tax-qualified, defined contribution profit-sharing plan, not the defined benefit pension plan.<br><br>    Section 2.1 uses the phrase "the lesser of" but does not have second condition.  We interpret the award to the alternate payee to be:<br>    (i)     39.4% of the Account as of the Division Date, or;<br>    (ii)    One hundred percent (100%) of the value of the vested portion of the Participant's Account in the Qualified Plan on the Payment Date. |

661204

Jim Keitges
March 13, 2006
Page 3

| | | In no event shall the Plan distribute an amount that exceeds 100% of the Participant's account on the payment date." |
|---|---|---|
| | 03/28/03 | **Complaint to Modify filed** |
| | 04/15/03 | Order issued on your Motion to Revise the Decree entered 01/05/03 to acknowledge gains or losses in the Northwest Airlines savings plan. Honorable J. Russell Derr declined to issue the issue non pro tunc because it appeared to be substantive. |
| | 06/13/03 | **Answer Complaint to Modify** |
| | 03/18/04 | **Amended Complaint to Modify** |
| | 06/17/04 | **Answer** |
| | 01/17/05 | Request for Admissions served on you.   These required answer within 30 days.   I do not see answers in the file. These were deemed admitted when not answered.   Since this is an important point, they accompany this.   If denials are intended, answers should be given now even though they are belated, and a motion should be filed requesting that they be treated as timely to protect yourself. |

6.   The essential issues raised by the Second Amended Complaint, now pending before the Court are these:

    a. May the Decree be modified, or has it become final?  If it has become final, are the proceedings you seek to have accomplished simply impossible?

    b. If the Decree may be modified under Section 25-2001, because it is not final, then what payment, if any, should you make towards the attorneys fees of Mr. Bertollini?

    c. What constitutes 50% of your pension plan valued as of November 28, 2001?

    d. What should the QDRO's provisions be concerning payout and other matters?

### Legal Discussion

7.   Your case is fraught with substantive legal problems.  These are extensive.  They spring from *Neb Rev Stat* § 42-372 which provides:

661204

Jim Keitges
March 13, 2006
Page 4

A decree dissolving a marriage becomes final, except for the purpose
of review by appeal, at the time specified in 42-372.01 [concerning
the six month waiting period and other matters]

For the purpose of review by appeal, the decree shall be treated as a
final order as soon as it is entered.

8.   In your case, your decree was entered more than six months before the first QDRO
     was filed. This occurred October 24, 2002. On that date, two separate QDRO's
     relating to Northwest Airlines Retirement Savings Plan, and Employee Stock Plan,
     respectfully, were issued.

9.   The modification Complaint was filed March 28, 2003, less than six months after
     the QDRO was entered, but more than a year after the decree was entered on
     January 4, 2002.

10.  Nebraska case law permits modification of a dissolution decree in some
     circumstances, "During the six month interlocutory period" but only upon good
     cause shown after notice to all interested persons and a hearing. *McAllister v.
     McAllister*, 228 Neb 314, 422 NW2d 345 (1988). Modification during this time is
     permissible only if proof was adduced showing "good cause to set aside or modify"
     the decree. *Younkin v. Younkin*, 221 Neb 134, 375 NW2d 894 (1985). The court's
     power to deal with a decree during the six month waiting period if governed by its
     sound judicial discretion. Thus, a Court may, but is not required, to modify a
     decree or permit modification proceedings.

11.  *Neb Rev Stat* § 42-372.01 provides that:

          (1) … a decree dissolving a marriage becomes final and
          operative 30 days after the decree is entered or on the date of
          death of one of the parties to the dissolution, whichever occurs
          first." A six month waiting period applies to the "finality" rule
          in so far as continuing health insurance coverage is concerned.
          Id.

12.  Modification proceedings in divorce cases are generally not permissible except
     where alimony, child custody, or child visitation matters are present. Generally,
     modification cannot be made to correct a reformed settlement position by the
     parties that varies the terms of the decree already entered. Where this occurs and
     the parties agree, by mutual assent, to a different approach, they must execute
     documents to achieve their objective, but the Court is not empowered to make a

661204

Jim Keitges
March 13, 2006
Page 5

modification.   The modification must be made by private contract, not public decree.

13.   Nebraska's "Final Order" rule governing appeals also limits a trial court's ability to modify a divorce decree. Here, it is clear your previous attorneys concluded they could not use the decree modification provisions of *Neb Rev Stat* § 42-364 et seq., the dissolution of marriage statues. Instead, they resorted to the more general Nebraska statute governing medications of decrees. Thus, your pleading before the Court invokes *Neb Rev Stat* § 25-2001. This statute permits a Court to vacate or modify judgments "after the end of the term upon the same grounds, upon a motion filed within six months after the entry of the judgment or order."

14.   *Neb Rev Stat* § 25-2001 continues that:

> (4) A District Court may vacate or modify its own judgments or orders after the terms at which such judgments or orders were made (a) for mistake, neglect, omission of the clerk or irregularity in obtaining a judgment or order; (b) for fraud practiced by the successful party in obtaining the judgment or order; (c) for newly discovered materially evidence which could neither have been discovered with reasonable diligence before trial or have been discovered with reasonable diligence in time to move for a new trial; (d) ...; (e)...; (f) for unavoidable casualty or misfortune, preventing the party from prosecuting or defending; and (g) .....

### Concerns

15.   We are concerned that the Court lacks power to grant the relief you seek in the pleadings now before the Court. Nebraska's case law is well established on this point.

16.   A Nebraska Court has no authority to vacate or modify a judgment after the final adjournment of the term of Court at which it was rendered except for the reasons stated in *Neb Rev Stat* § 25-2001. *State ex rel Dirdine v. Fuller*, 216 Neb 86, 341 NW2d 613 (1983).

17.   In short, in may be that Judge Ashford's concerns, expressed at the initial meeting, are well founded. The Court may simply lack subject matter jurisdiction to grant the relief you now seek, no matter how much or how little the Court might *want* to rule for you. The argument for modification of the decree under § 25-2001 is not strong in your case. Your justification for a change is based on post-decree market

661204

Jim Keitges
March 13, 2006
Page 6

       changes, and varying ways that apparently exist to pay out pension benefits.  Yet,
the QDRO certainly could have been drafted to accommodate the risk of a down
turn in the market.  Indeed, it should have been.  The financial circumstances
themselves are always unpredictable.  Markets move up and down.  People make
and lose money.  This goes on before and after judgments were decrees.  Divorce
filings must be written to accommodate these factors if there are to be jointly
shared investment risks and awards after a decree is entered.

18.     We are writing to tell you that we believe the case now pending in Court is unlikely
to achieve the relief you seek, but another concern requires attention too.

19.     You have spent enormous amounts of time and energy telling and retelling your
story.  We know from listening to you that each iteration of your story is long, and
complicated.  It seems to be problematic for you to be succinct in your description
of the facts, to eliminate your complaints about personalities, and to focus on
simple solutions.  The file contains some inferences that this past predilection has
proven harmful to you.  For example, you have filed Complaints against a lawyer
and alluded to filing one against a judge.  There is nothing wrong with doing either
of these things so long as the complaints were justified.  But a disappointing
outcome is not a justification, and the filing of complaints like the ones you have
prosecuted or considered prosecuting can complicate matters for you. (*We believe
complaints should be filed against lawyers and judges when the circumstances
justify them.*)  But, the presence or absence of justification should be filtered
through objective eyes, ears, hands and minds before complaints are filed.  This
does not appear to have occurred in your case.  There is simply too much emotion
involved in divorce cases and their aftermath to know whether parties are well-
founded in their complaints against opposing counsel or a judge.  Objective criteria
to evaluate performance, and the presence or absence of impropriety, misconduct
or neglect, are uncompromisingly important.

### Conclusion

20.     May we summarize?  The chronology of events discloses that your divorce decree
was not appealed timely, and modification proceedings to alter it, or its subsequent
QDRO, were not initiated except to the extent they were filed within six months of
the QDRO's entry.  We doubt this filing will result in relief under *Neb Rev Stat* §
25-2001.

21.     To the extent you can help yourself to resolve your case may we urge to (1) focus
on select issues and remedies, (2) ignore past personalities and personality slights,
or put them in a highly professional perspective, (3) do not threaten complaints,
and do not insist on repeated recitations of the facts comprising your view of your

661204

Jim Keitges
March 13, 2006
Page 7

> case. Be careful and thorough about relating the facts, but do not do in 20 pages what you could do in two.

22. We are hopeful some relief can be obtained, but analytically pessimistic about your prospects.

Respectfully,

*/s/ David A. Domina*

David A. Domina

DAD/jlm

661204

(Comcast.

**From:** "James Cann" <jfc@dominalaw.com>
**To:** <jmkeitges@comcast.net>
**Cc:** "Emily Kucera" <EEK@dominalaw.com>
**Subject:** Keitges v. Keitges
**Date:** Wed, 21 Sep 2005 18:55:15 +0000

Jim:

Thank you for our productive meeting this morning. We discussed the difficult
prospects for success you face in this modification hearing. Our previous
letter to you on this subject addressed this in more detail, but as you know, we
have serious concerns that the Court will see this as a decree drafting problem,
and elect not to modify it.

Neb Rev Stat 25-2001 allows modification to be made to decrees under certain
defined circumstances. I am not confident your circumstances will bring you
within this statute. The District Court also has power to modify decrees and
judgments under its general equity jurisdiction, but is "rarely authorized" to
do so. DeVaux v. DeVaux, 245 Nb 611 (1994); Portland v. Portland, 5 Neb App 364
(1997).

You also face difficulties because all of the orders we are seeking to modify
were entered by consent. The Nebraska Supreme Court has said, "a consent decree
is usually treated as an agreement between the parties and is accorded greater
force than ordinary judgments and ordinarily will not be modified over objection
of one of the parties." Hoshor v. Hoshor, 254 Neb 743 (1998). In the absence
of fraud or gross inequity, no modifications will be made. Id. I am not
confident your circumstances will be seen as the equivalent of fraud or gross
inequity.

Nonetheless, we have some arguments to make, and we will make them, but as I
stated in our meeting, I am not confident the judge will modify the orders that
have already been entered. In our conversation this afternoon, you indicated
you did not have access to e-mail at this time, but I advised you of the
following concerning settlement possibilities:

You authorized settlement on these terms:

1. $87,330.69 is paid to Ms. Keitges out of your 401(k) plan.

2. $2,500 a month is paid to Ms. Keitges beginning in September 2010. This
will come from your pension account, and a QDRO will be entered specifically
defining this as the amount, and the start date for payments to commence.

3. The QDRO regarding the Northwest Airlines Corporation Employee Stock Plan,
in the amount of $32,526.41 shall remain in effect, unmodified, except as to
clarify that the "interest accrued attributable to such award" shall mean the
amount of interest that the money market account has generated on this amount
since the date of the decree.

4. You will not claim the decree should be modified to award you any more
proceeds of the home sale that have been paid to Ms. Keitges.

I am not confident this settlement will be agreed upon, but in the event it is,
I advised you of the following:

Exhibit 17

1. You indicated a desire to file malpractice claims against your former
attorneys. A settlement here might reduce the amount of any claims you have
against your former counsel. On the same token, you have a duty to mitigate
your damages, and if this settlement can reasonably reduce the amount of your
losses, then you have a duty to undertake it, generally.

2. We do not represent you in connection with malpractice claims, nor have we
been asked to comment on whether or not you have any viable malpractice claims.
We have not been engaged to opine on the statutes of limitation that would
govern any such claims, although we can tell you Nebraska's statute generally
provides for a two year statute of limitations on malpractice claims.
Sometimes, but not always, meritorious arguments can be made that continued
service, after the act of malpractice, toll the start of the limitations period,
but this is not a certainty, and we express no opinion on this subject.

3. There might even be doubt that the Court has jurisdiction to approve and
enforce any settlement you reach along the lines outlined above. Any settlement
agreement reached today will need to be recited on the record, and the parties
will need to consent that the court has jurisdiction over the subject matter and
the parties. However, there could be doubt about the enforce ability of such a
settlement, because the parties cannot confer subject matter jurisdiction on the
court by consent, if subject matter jurisdiction does not exist as a matter of
law.

I will be in touch with you as the day goes on.

Respectfully,

James F. Cann, Lawyer
402-493-4100, Domina Law Group pc llo
www.dominalaw.com

This message is protected by 18 USC § 2510-21. Unauthorized usage is subject to
statutory sanctions.

[ Back ]

© 2004 Comcast Cable Communications, Inc. All rights reserved.